HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
Robert S. Raymar, Esq. (RR/0876)
One Gateway Center
Newark, New Jersey 07102-5386
(973) 621-9020
Attorneys for Defendant Rapunzels of Palm Beach, Inc.
d/b/a Rapunzel's Closet

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------x
VENDA, INC.,                     :   Civil Action No. 07 CIV 9526
                                     (JSR)
            Plaintiff,           :

v.                               :   ANSWER, AFFIRMATIVE DEFENSES
                                     AND COUNTERCLAIM
RAPUNZELS OF PALM BEACH, INC.,   :
d/b/a RAPUNZEL'S CLOSET,             (Electronically Filed)
                                 :
            Defendant.
---------------------------------x

Defendant Rapunzels of Palm Beach, Inc. d/b/a Rapunzel's Closet ("Rapunzel" or "Defendant"), by way of Answer to the Complaint of Venda, Inc. ("Venda"), says:

I.

JURISDICTION AND VENUE

1. Defendant denies that this Court has jurisdiction, as the amount in controversy is not equal to or in excess of $75,000. Defendant is unaware of any agreement, invoice or set of invoices from Venda equal to or in excess of $75,000.

2. Defendant denies that the majority of events giving rise to the claims in this action have taken place in this judicial district.

## II.

## THE PARTIES

3. Defendant neither admits nor denies the allegations of paragraph 3, but leaves plaintiff to its proofs.

4. Defendant admits the allegations of paragraph 4.

## III.

## FACTUAL BACKGROUND

5. Defendant neither admits nor denies the allegations of paragraph 5, but leaves plaintiff to its proofs.

6. Defendant admits the allegations of paragraph 6, and adds that it also has retail locations in Palm Beach, Florida.

7. Defendant denies the allegations of paragraph 7, and states that an Agreement was executed on or about November 30, 2006.

8. Defendant denies the allegations of paragraph 8, but admits that Venda commenced work.

9. Defendant admits that plaintiff sent invoices, but denies that defendants provided the services required by the Agreement, and denies that there are outstanding invoices totalling $75,000.

10. Defendant admits that plaintiff made demands, but denies that defendant owed plaintiff anything.

11. Defendant admits the allegations of paragraph 11.

12. Defendant admits that it has refused to pay plaintiff's invoice, but denies that they total in excess of $75,000.

IV

### FIRST CLAIM FOR RELIEF

(For Breach of Contract)

13. Defendant repeats and realleges its answers set forth in paragraphs 1 through 12 as though set forth at length herein.

14. Defendant admits the allegations of paragraph 14.

15. Defendant denies the allegations of paragraph 15.

16. Defendant denies the allegations of paragraph 16.

17. Defendant denies the allegations of paragraph 17.

18. Defendant denies the allegations of paragraph 18.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff breached its Agreement with defendant, did not perform in accordance with the Agreement, failed to cure its breaches, and is not entitled to any payment whatsoever.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff committed repeated fraud on defendant by misrepresenting the functionality and features it would provide under the Agreement, misrepresenting that it could and would perform under the Agreement, and misrepresenting that it could and would rectify its many deficiencies in the course of its

atrocious performance, while knowing that it was never ready, willing and able to do any of the foregoing, in order to induce defendant to rely to its detriment upon plaintiff's repeated material misrepresentations in entering into an Agreement, and then in delaying termination of the Agreement in accordance with its terms.

## COUNTERCLAIM

Defendant Rapunzel, by way of Counterclaim against plaintiff Venda, says:

## COUNT I

### (Breach of Contract)

1. Rapunzel entered into an Agreement with Venda on or about November 30, 2006 to develop an eCommerce site for Rapunzel.

2. Rapunzel entered into the Agreement based upon Venda's evaluation of Rapunzel's requirements, and Venda's representations that it was ready, willing and able to fulfill Rapunzel's requirements.

3. Venda's representations were knowingly false and fraudulent when made, and Rapunzel relied upon them to its detriment. Moreover, Venda fraudulently misrepresented the functionality and features it would be providing, upon which representations Rapunzel relied to its detriment.

4. Rapunzel repeatedly called to Venda's attention its breaches of the Agreement and its failures to perform in a proper

and timely manner, and called upon Venda to cure its breaches and failures to perform.

5. Venda on each occasion represented to Rapunzel that it would cure all such breaches and failures to perform, but Venda failed to do so.

6. Venda's representations that it would cure its breaches and failures to perform were knowingly false and fraudulent when made, and Rapunzel relied upon them to its detriment. Moreover, Venda fraudulently misrepresented that it would assign to Rapunzel personnel who were fully familiar with the Rapunzel project and were capable of completing it timely, and misrepresented the status of the personnel it assigned. Rapunzel relied upon these representations to its detriment.

7. Venda also misrepresented the date on which Rapunzel's eCommerce site would "go live," changed the date unilaterally and repeatedly, and then lied to Rapunzel that Venda had never represented any "go live" date.

8. Rapunzel summarized some of Venda's most serious breaches of the Agreement and fraudulent misrepresentations in an email letter to Venda dated April 22, 2007, and terminated the relationship as permitted by the Agreement. <u>See</u> Exhibit "A" hereto.

9. Venda on May 2, 2007 thanked Rapunzel for its "thoughtful and thorough email of April 23 [sic], 2007", but then added further insult and injury to its prior incompetence by

showing that it still did not understand the Rapunzel project, and still could not or would not assign personnel who were capable of fulfilling Venda's obligations. On May 11, 2007 Rapunzel sent another email letter to Venda summarizing some more of Rapunzel's proofs of Venda's most serious breaches of the Agreement and fraudulent misrepresentations. See Ex. "B" hereto.

10. Thereafter, Venda on May 11, 2007 responded in an email letter that its work would "be ready for UAT on time", and that "you will be contacted by our counsel shortly." "UAT" means User Assurance Testing. See Ex. "C" hereto. In fact Venda never notified Rapunzel that its work was "ready for UAT," and counsel never contacted Rapunzel until the summons was served in this litigation.

11. Venda never delivered to Rapunzel what the Agreement required, damaging Rapunzel, delaying Rapunzel's eCommerce site, and causing Rapunzel substantial damages.

12. As a result of Venda's breaches of contract and repeated fraudulent misrepresentations, Rapunzel wasted approximately $55,000 on Venda, and seeks its return in full. Moreover, Rapunzel was forced to engage other personnel to create its eCommerce site at a cost exceeding $110,000, which damage Rapunzel seeks to recover from Venda.

13. Rapunzel is aware of only one outstanding unpaid invoice from Venda, in the amount of $10,000.

WHEREFORE, Rapunzel requests judgment against Venda and an Order of the Court:

    A.    For compensatory damages;

    B.    For the return of all sums Rapunzel paid to Venda;

    C.    For attorneys' fees, costs and interest; and

    D.    For such other relief as may be just and proper.

## COUNT II

### (Fraud)

14. Defendant repeats and realleges the allegations set forth in paragraphs 1 through 13 of its Counterclaim above as though set forth at length herein.

15. Venda's aforesaid conduct constitutes fraud.

16. Rapunzel relied to its detriment on Venda's repeated fraudulent misrepresentations and was damaged thereby.

WHEREFORE, Rapunzel requests judgment against Venda and an Order of the Court:

    A.    For compensatory, consequential and punitive damages;

    B.    For the return of all sums Rapunzel paid to Venda;

    C.    For attorneys' fees, costs and interest; and

        D.    For such other relief as may be just and proper.

                      HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
                      Attorneys for Defendant-Counterclaimant

                      By: _____
                            ROBERT S. RAYMAR
                            A Member of the Firm

Dated: November 26, 2007

**Exhibit A**

| | |
|---|---|
| **From:** | Randi Evans [randi@shoprapunzels.com] |
| **Sent:** | Sunday, April 22, 2007 7:37 PM |
| **To:** | 'Bernardine Wu'; 'Jim English'; 'Ashley Olcer'; 'AJ Leale'; 'Jeff Max' |
| **Subject:** | Venda Termination |

Dear Jeff, Bernardine, Jim, Ashley, and AJ,

I received your emails and voicemails late last week. I didn't respond because I was evaluating your performance which is in violation of section 6.1 of the Services Agreement, and I've concluded that under section 5.5 you have left me with no alternative but to terminate this agreement.

That said, under Section 5.5 of the Services Agreement, I am terminating this Agreement, effective today, Monday, April 23, 2007, as there have been material breaches that have gone unremedied for at least 30 days by Venda.

Per Jessica Ader's email dated 3/13, following a series of transitional concerns, Venda has continued to perform the services without reasonable care and skill and in accordance with applicable professional standards.

As a result of the continuous turnover at Venda, there has been a great deal of information that has been lost in transition and translation. As previously documented to Venda, since 2/2/2007, we have had two project managers leave (Dino Buiatti and Constantine Kipnis), one designer leave (Nataliya Yevtushenko) and a temporary freelance designer named Pete responsible for our account. We now understand that our recently-appointed account manager (Ashley Olcer) is going on 5-week maternity leave beginning April 23, 2007.

Furthermore, despite her assertion to the contrary, I have reason to believe that Bernardine Wu, COO and President (and point-of-contact at the project's inception) is no longer working full time at Venda. Since Project Manager Dino Buiatti left Venda 2/2/2007, Jim English, Vice President- Professional Services, has subsequently become a further point of contact upon whom Bernadine claims to be "relying heavily".

Throughout these ongoing personnel changes, the subsequent disruptions have caused a great deal of information and direction to become lost in transition. The following list outlines the order of events chronologically:

*   2/2/07 Following a 24 hour period of non-communication from Venda, Dino Buiatti and Nataliya Yevtushenko both leave Venda without prior notification and with immediate prejudicial effect on us.

*   2/3/07 Constantine Kipnis is appointed Project Manager following Dino Buiatti's departure. Ashley Olcer was introduced as Account Manager and Jim English was added as a further point of contact on the project. As a result, your new project management team (Constantine and Ashley) had to be brought up to speed on the current state of the

1

project. This is where we discovered the lack of knowledge pertaining to many commitments and agreements that Dino assured us would take place. Constantine, Ashley, and Jessica discovered numerous unresolved issues (missing and incomplete designs and functionality discrepancies) causing a setback of the projected "go live" date. The lack of professionalism, expertise, and awareness of the circumstances adversely impacted the project.

* 3/12/07 Constantine Kipnis leaves Venda without warning and with further immediate prejudicial effect on us. AJ Leale is appointed Project manager (the third Project Manager since 11/16/2006). When AJ took over the new role of project manager, we learned that our previous unresolved problems were going to cost us a great deal of time and money to remedy. As recently as April 18, 2007, AJ wrote Jessica about new issues Venda overlooked.

* 4/3/2007 Upon a recent document request to Venda by Rapunzel's Closet, it was uncovered that 1) Neither company signed a Statement of Work contract 2) both parties signed an incorrect (un-dated and un-named) Services Agreement and 3) I never signed the Non-Disclosure Agreement. In addition, there was never any formal written communication when Venda changed our live date repeatedly, nor any written explanation why certain charges would apply due to the date change.

* 4/19/07 Ashley notifies Rapunzel's Closet that she will be commencing her maternity leave for 5 weeks starting imminently, and Venda didn't give us the slightest idea who would be replacing Ashley.

Here are some examples of information that has been lost in transition and translation and/or overlooked by Venda's experts, all of which is documented and can be provided upon request:

* Dino telling us that we can change numerous design features during the User Assurance Testing (UAT) period (i.e. colors, shop by category, rollovers, etc).

* Venda's team consistently overlooked the fact that certain areas of the site, more specifically, the original design, didn't support the functionality.

* Sets of designs were completely left out (i.e. press page, my account log in, finalized customer service page, gift certificate page, about us page, etc).

* Some of our static pages were "floating" and not connected to the rest of the site, and Venda never completed designing these pages – however we were incorrectly told that they were completed. Additionally, at Venda's instruction, we were improperly told to sign off on them so that Venda could meet its own deadlines. We did not learn that the pages were not connected to the rest of the site until a later date (during Constantine's tenure as Project Manager).

Venda originally attempted to charge us for all the above. This charge was only waived once the erroneous charges had been identified by us and proven by Jessica Ader. Previously, Venda had offered to partially reduce the $9,000 fee to $4,500 as a "good

2

faith" gesture, but Venda has not performed in "good faith" and its gesture was too little, too late.

In addition to the above, there have been a number of web site features, offered to us prior to signing the contract as included. We were later informed that these were additional items outside of the scope of the contracted services. There appears to be a great deal of discrepancy between what Venda offered as "standard" vs what thereafter Venda has claimed to be "customized" (i.e. image pop up window and wish list).

Venda continually misinformed us of the amount of manual labor and technical skills required for the project and customer imports. When this was brought to Venda's attention, Venda attributed their non-performance to Rapunzel's Closet's lack of staff. When Venda originally pitched this project, VP of Sales Paul Colucci was cognizant of our technical skill level and did not inform us that we needed to have an html knowledgeable person on staff. We do not know html, nor were we told we needed to know this until months into the project. Hiring someone to write html requires an added expense on our part, which you did not inform us we needed to incur.

We have wasted much time and money getting the new Venda personnel acclimated to the project. While Venda has made attempts to compensate us for their deficiencies, we shouldn't have been subjected to such costly and tiresome inconsistencies in the first place. Your performance to date proves that there will be no end to these costs, or to our need to educate ever changing Venda personnel.

Furthermore, Venda's decision to add a pregnant account manager onto our project 6 weeks before her due date was irresponsible and further exemplifies Venda's lack of forethought in relation to our account and lack of concern about the time and expense Venda is imposing on us.

Most importantly, we were told that we would be live by June 5, 2007 and that Venda understood our needs and wants in a website. Currently, our live date is scheduled for July 3, 2007. However, that date depends on the length of our UAT (testing) period. Your performance to date convinces us that you cannot even meet the repeatedly postponed live date.

The above represents only a portion of Venda's material breaches of its agreement with us, and of its imposition on us of material and unexpected costs, delays, and consequential damages. During your entire course of conduct with us, you have failed to give us the professionalism, care, skill and respect to which we are entitled as your client. Consequently, Venda has given us no alternative to termination of this agreement immediately.

Sincerely,

Randi Evans

President

ShopRapunzels.com

**Exhibit B**

```
From: Jessica Ade <jessica@shoprapunzels.com>
Sent: Friday, May 11, 2007 14:58
To: Jeff Max
Cc: randi@shoprapunzels.com; bsraymar@hlgslaw.com
```

Subject: response to your correspondence of 23 April, 2007

Dear Jeff,

We have thoroughly examined your email. In numerous instances, you actually make our point that Venda's constant turnovers left us, as your client, with no one at Venda who understood our needs, Venda's commitments to us, the status of the project, or who took us seriously.

You have incorrectly failed to recognize that we repeatedly provided Venda with adequate time and notification to "cure" the issues at hand. If you check the email record and your staff notes, you will read that we repeatedly notified you of Venda's omissions and failures to understand the project, and that you repeatedly promised a new understanding and a new willingness to perform better. Venda continually failed to provide proficient services through the lack of employee continuity, absence of professionalism, and unwillingness or inability to remedy our expressed concerns. The result has been inadequate Venda performance and an inadequate eCommerce solution for ShopRapunzels.com.

We outline below only a few of the many proofs we unfortunately have. Please do not bluster or threaten: we too have counsel. We too have claims, and please rest assured that they far exceed Venda's.

On 2/5/07 – Jessica sent an email to Bernadine expressing our anxieties and concerns going forward with the project and a new PM (after Dino quit). The email outlined the following issues, among others:

* The lack of immediate contact by Venda's team when we emailed, called, and attempted to move forward with the project after Dino left. On 2/2/07 Jessica emailed Constantine and Nataliya regarding project issues and did not receive a response until the following Monday at 5pm.
* Our apprehension to move forward with a new project manager (in the middle of our project) that already appeared less dedicated.
* Our uneasiness due to many unresolved design and functionality issues.

In response to this notice that Venda must cure its deficiencies, we were assured by Bernadine that we would have weekly checkpoints, status reports, and a line of open communication between both of our respective teams. The issues were repeatedly discussed, but were never resolved. There has been no cure.

On 3/13/07 – Jessica sent another email to Bernadine regarding Rapunzel's overall lack of confidence in Venda after Constantine abruptly left the company. While this notification was met with a compensatory gesture from Venda, which we appreciated, we only received verbal assurances from Bernadine that our project would not suffer from the lack of employee continuity. Venda again did not cure or even improve on its performance failures.

On 3/14/07 – Jessica sent yet another email to Bernadine again outlining our further

2

concerns with the new estimated live date (pushed back June 18 or June 28th). The transitions with new project managers resulted in the discovery of design and functionality issues Venda's team overlooked. These issues should not have caused a negative impact to our project, extended time or additional costs.

The above represents only a few of the specific events exemplifying Venda's material breach of our Agreement. In addition to these specific events, we would like to note some of the ways you have been misinformed regarding some of the misstatements you make in your May 2, 2007 email. I have outlined a partial list below:

* Your May 2, 2007 email states "Venda never quotes "live" dates. Never." To be kind, your statements are inaccurate. If you will take a look at Venda's 01-22-07 status report, you will read "Stage 6 Milestones – Go Live," and "6.1 Go Live Original Planned Date 6/5 Current Forecast Date 6/5 Status GREEN." If you will also read your 01-29-07 status report, you will notice the same terminology, but the "6.1 Go Live Current Forecast Date" slipped to "6/18." If you will look at the "Customer Change Request Form" that Venda prepared 3-26-07, you will see that Venda quoted "the targeted live date would be July 3." It would appear either that you are badly misinformed, or that the "go live" dates that Venda was quoting to us were meaningless and fraudulent. We believed and relied upon Venda's representations, to our detriment.
* As the project developed, we discovered that Venda had failed to uncover many issues, requiring resolution and revision. Venda, as the professional, should have anticipated and dealt with these issues earlier and honestly. Our PM Jessica had to change some of our project requirements because of design features that had been unresolved or overlooked by Venda. So you are again misinformed and your email has it backwards: we did not generally request changes, but instead discovered omissions on Venda's part which needed to be resolved. The change request document was only put into place after we discovered that Venda's team overlooked one aspect or another of our design and functionality requirements. The change request fee was eliminated after we went through a lengthy process to prove to Venda that the changes were a result of Venda's lack of knowledge on our project.
* You also declared that a "transition of project managers does not imply a lack of care or skill." The point to be made here is that our issues were not resolved when Venda continued to replace one project manager with another. Venda's skill set is not directly relevant; what is relevant is that Venda did not apply its skills to our project because Venda's constant turnover deprived Venda of real knowledge of what our project entailed, how far along Venda was in completing it, and what representations Venda had made to us along the way. Venda's lack of employee retention caused a loss of time and important information, and caused us unanticipated costs. At most points in the project, we were not questioning whether or not one project manager was more "qualified" than another. We expected that our 3rd manager would stay for the duration of the project, know where the project stood, know what Venda had promised, and have the project knowledge to get it done. Our legitimate expectations were not met.
* You also concede that you do not understand the relevance of our expressed concern that Bernadine is no longer at the company. Bernadine was always our highest level contact at Venda. Even though she may not have had any participation in any element of the sites production, she was appointed as a main contact for concerns and issues. Now you have removed her from that list of contacts. Your failure to understand our point goes to the heart of Venda's breaches and lack of professionalism: 1) if Venda even now doesn't understand its client, 2) the history of communications with us, 3) the status of our project, and 4) have the ability to complete it, Venda has proved its breach and has exhausted both our patience and it's legitimate opportunities to cure.
* As you pointed out in your email, maternity leave is strongly supported by your company. I would never discredit that principle, but you knew that our project was in a delicate state. We were at a point of the project that requires consistency and completion. It did not make sense for you to appoint another manager that was leaving in the midst of the project. Your actions once again proved that Venda does not care about our project or us.

Should you choose to pursue a lawsuit against Rapunzel's of Palm Beach, Inc. for any sum, we will take legal action for the money paid to Venda, and for what we have lost in

consequential damages. We have been damaged and defrauded by Venda's misrepresentations, failure to provide us with the qualified services, care, and skill we deserve as your client, and by your repeated failures to cure the breaches and deficiencies we repeatedly called to Venda's attention. Consequently, Venda gave us no alternative but to terminate this Agreement.


Sincerely,

Randi Evans

President

ShopRapunzels.com


cc Robert S. Raymar, Esq.

Hellring Lindeman Goldstein and Siegal, LLP

**Exhibit C**

```
From: "Jeff Max" <JeffMax@venda.com>
Date: Fri, 11 May 2007 21:06:48
To:"Jessica Ader" <Jessica@ShopRapunzels.com>
Cc:<randi@shoprapunzels.com>,<bsraymar@hlgslaw.com>,"Irwin Schwartz" <ISchwartz@business-
litigation-associates.com>
Subject: RE: response to your correspondence of 23 April, 2007
```

Hi Jessica.

Thanks for this.  It appears to be the same response that Randi sent earlier in the week.

Despite the fuss and spurious allegations, the Rapunzel's Closet site has been completed by our production team, is undergoing QA and will be ready for UAT on time.  I'm no lawyer, but it would appear to me that Venda has delivered against its commercial obligations, notwithstanding the crisis you have contrived.

You will be contacted by our counsel shortly.

Jeffrey A. Max

\*\*\*

Jeffrey A. Max | CEO | Venda, Inc.

 Venda_ISTM_07-small    <cid:image003.jpg@01C793E6.611166C0>